UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| CREEKSIDE SENIOR APARTMENTS LIMITED PARTNERSHIP, | ) ) ) | Case No. 10-53019 |
| Debtor. | ) ) | Hon. Tracey N. Wise |

### MOTION OF THE DEBTOR FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION TO THE SECURED LENDER; (III) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION UNSECURED FINANCING; (IV) GRANTING THE POST-PETITION LENDER SUPER PRIORITY UNSECURED ADMINISTRATIVE EXPENSE STATUS; (V) GRANTING RELATED RELIEF; AND (VI) SCHEDULING A FINAL HEARING

Creekside Senior Apartments, Limited Partnership, as the debtor and debtor-in-possession (the "Debtor"), through its proposed undersigned counsel, hereby moves (the "Motion") for entry of an interim order and final order, under sections 105(a), 361, 363, 364, 503, 506, and 552 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and [E.D. Ky. LBR 4001-2]: (a) authorizing the Debtor to use cash collateral and granting adequate protection to the Debtor's Secured Lender; and (b) authorizing the Debtor to obtain unsecured post-petition financing and granting the Post-Petition Lender a superpriority unsecured administrative expense claim, each on the terms set forth herein. In support of this Motion, the Debtor respectfully represents as follows:

## Concise Statement of Relief Requested and Summary of Terms of Proposed        Credit Agreement as Required Pursuant to Bankruptcy Rule 4001(c)(1)(b)

The Debtor seeks entry of an Interim Order substantially in the f        orm attached hereto as Exhibit A , authorizing the Debtor to obtain cash advances and other extensions of cr        edit as a superpriority unsecured administrative expense (the "Post-Petition F        inancing"), in a principal amount not to exceed $100,000, from the Post-Petition Lender pursuant to the te        rms and conditions of this Interim Order and of the Debtor-in-Possession Fina        ncing Agreement entered into by and between the Debtor, as Borrower, and Alliant Holdings of Cr        eekside, LLC, as the lender (the "Post-Petition Lender") [1] (the "Financing Agreement").

Pursuant to Bankruptcy Rule 4001(c)(1)(B), the Debtor sets forth herein a        concise statement of the requested relief and a summary of the key term        s of the proposed Financing Agreement and the locations within the relevant documents of all material provis        ions of same. [2]

| Reportable Item | Summary |
|---|---|
| Borrowing Limit and Availability <br> *Location in Financing Agreement: p.1* <br> *Location in Order: p.6* | A non-revolving draw facility of up to $100,000. Funds are available upon entry of Interim Order upon request from Debtor. |
| Use of Proceeds <br> *Location in Financing Agreement: p.2* <br><br> *Location in Order: pp.5-6* | The Debtor shall use the proceeds for the operation of its business during the pendency of the bankruptcy proceedings, in accordance with the Budget, to the extent that Rent Payments and any other operating income are insufficient, as well as for the payment of allowed professional fees and expenses. |

---

[1] Capitalized terms not defined herein shall have th        e meanings ascribed to them in the Financing Agreem        ent.

[2] In the event of an inconsistency between the summa        ry of key terms and the Financing Agreement, the Fi        nancing Agreement shall govern.

| ReportableItem | Summary |
|---|---|
| Interest Rate <br> *Location in Financing Agreement: p.1* <br><br> *Location in Order: p.2* | The Loan will be non-interest bearing. |
| Expenses <br> *Location in Financing Agreement: N/A* <br><br> *Location in Order: N/A* | |
| Term/Maturity Date <br> *Location in Financing Agreement: p.2* <br><br> *Location in Order: p.7* | The Financing Agreement terminates upon the occurrence of a Termination Event, which includes: (i) entry of an order in the Bankruptcy Case authorizing and/or directing a sale of all or substantially all of the Debtor's assets pursuant to section 363 of the Bankruptcy Code, (ii) the filing of a plan of reorganization by a party in interest that does not propose to promptly pay in full all Post-Petition Financing, except as authorized by Lender; (iii) entry of an order in the Bankruptcy Case confirming a Plan of Reorganization, (iv) entry of an order in the Bankruptcy Case converting the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code, (v) entry of an order in the Bankruptcy Case appointing a trustee or examiner in the Bankruptcy Case; (vi) entry of an order in the Bankruptcy Case dismissing the Bankruptcy Case, or (vii) a Breach by the Debtor. |
| Events of Default <br> *Location in Financing Agreement: p.2* <br><br> *Location in Order: p.7* | See above. |
| Liens/Security <br> *Location in Financing Agreement: p.2* <br><br> *Location in Order: p.10* | All Post-Petition Financing will constitute allowed unsecured, superpriority administrative expense claims. |

| ReportableItem | Summary |
|---|---|
| ProfessionalFeeEscrow<br>*LocationinFinancingAgreement:*<br>*p.2*<br><br>*LocationinOrder:p.6* | Lenderwillconsenttofundingofallowed Professional feesandexpensesaccruedpriortoa Termination Event. |
| BorrowingConditions<br>*LocationinFinancingAgreement:*<br>*pp.1-2*<br><br>*LocationinOrder:p.7* | TheFinancingAgreementandtheInterimOrder containcertainconditionsprecedenttotheinitial advanceandtoeachsubsequentadvancemadetothe DebtorundertheFinancingAgreement. |
| Waiverormodificationofthe<br>automaticstay<br>*LocationinFinancingAgreement:*<br>*N/A*<br><br>*LocationinOrder:N/A* | |
| Waiverormodificationofapplicable<br>nonbankruptcylawrelatingtothe<br>perfectionofalienonproperty,or<br>ontheforeclosureorother<br>enforcementofthelien<br><br>*LocationinFinancingAgreement:*<br>*N/A*<br><br>*LocationinOrder:N/A* | |
| Release,waiverorlimitationon<br>claimsorothercausesofaction<br>belongingtotheestateorthetrustee<br><br>*LocationinFinancingAgreement:*<br>*N/A*<br><br>*LocationinOrder:N/A* | |

| Reportable Item | Summary |
|---|---|
| Indemnification<br>*Location in Financing Agreement: N/A*<br><br>*Location in Order: N/A* | |
| Release, waiver, or limitation of section 506(c) rights<br>*Location in Financing Agreement: N/A*<br><br>*Location in Order: N/A* | |
| Granting of liens on claims or causes of action arising under Chapter 5 of the Bankruptcy Code<br>*Location in Financing Agreement: N/A*<br><br>*Location in Order: N/A* | |

## Jurisdiction

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a), 361, 363, 364(c), 503, 506, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001, and E.D. Ky. LBR 4001-2.

## Background

### The Debtor

3.      The Debtor is a Kentucky ULPA Limited Partnership engaged in the         business of owning, operating, and leasing a 40-unit multifamily low-income housing          apartment complex located in Nicholasville, Kentucky (the "Property").  The Property          is commonly known as "Creekside Senior Apartments."

4.      The Debtor's primary source of revenue is rental income derived fr          om the operation of the Property (the "Rent Payments").  The Rent Payment          s include payments from tenants of the Property as well as payments from one or more gover          nment entities that subsidize tenant living expenses. In the ordinary course of its business, the D          ebtor uses the Rent Payments to pay all necessary and required expenses of the Debtor (the "Operating Ex          penses").

### The Prepetition Indebtedness

5.      On or about April 27, 2004, the Debtor entered into a financing transaction          in which it obtained a loan from Bank of America, N.A. (the "Secured L          ender") in the original principal amount of $1,390,000 in order to acquire, rehabilitate and/or construct          the Property.  Pursuant to the financing, the Debtor executed the following documents          which govern the terms of the financing against the Property (collectively, the "2004 Loan Documents"          ):

- a Construction Phase Financing and Reimbursement Agreement betwee          n Creekside Senior Apartments, Limited Partnership, a Kentucky lim          ited partnership, and Bank of America, N.A., dated as of April 27, 2004, a copy o          f which is attached hereto as Exhibit C     ;

- a Construction Phase Mortgage, with Assignment of Rents, Security          Agreement and Fixture Filing between Creekside Senior Apartments, Limited          Partnership and Bank of America, N.A., dated as of April 2004, a copy of which is          attached hereto as Exhibit D   ;

- a Multifamily Mortgage, Assignment of Rents and Security Agreement, dated as of April 2004, between Creekside Senior Apartments, Limited Partnership, and Bank of America, N.A., a copy of which is attached hereto as Exhibit E_____; and

- a Multifamily Note dated April 27, 2004, in the principal amount of $1,390,000, made payable to Bank of America, N.A., a copy of which is attached hereto as Exhibit F.

6.      In 2007, the Debtor executed the following additional documents which also govern the terms of the financing against the Property (the "2007 Loan Documents"):

- a Supplemental Agreement Regarding Outstanding Indebtedness dated as of October 31, 2007, an unexecuted copy of which is attached hereto as Exhibit G_____;

- an Amendment to Construction Phase Mortgage, dated October 31, 2007, between Creekside Senior Apartments, Limited Partnership, and Bank of America, N.A., an unexcuted copy of which is attached hereto as Exhibit H_____; and

- a Construction Phase Note dated as of October 31, 2007, in the principal amount of $1,390,000, made payable to Bank of America, N.A., a copy of which is attached hereto as Exhibit I____ (the "2007 Note"), which note replaced the 2004 Note.

7.      As of April 2009, the Debtor had defaulted under the 2007 Loan Documents by, among other things, failing to satisfy the indebtedness due upon maturity of the 2007 Note on July 31, 2008. As a result, the Debtor executed the following additional documents which also govern the terms of the financing against the Property (with the 2004 Loan Documents and the 2007 Loan Documents, the "Loan Documents"):

- a Waiver and Amendment dated as of April 24, 2009, a copy of which is attached hereto as Exhibit J___; and

- an Amended and Restated Construction Phase Note dated as of April 24, 2009, in the principal amount of $1,340,000, a copy of which is attached hereto as Exhibit K____ (the "2009 Note"), which note amended, replaced and superseded the 2007 Note; and

-7-

- an Amendment to Construction Phase Mortgage dated as of April 24, 2009, a copy of which is attached hereto as Exhibit L      .

8.      As of March 23, 2010, the Debtor had defaulted under the 2009 Note by failing to pay the installments of principal in the amount of $30,000 due on September 30, 2009, and December 31, 2009.  As a result of these payment defaults, on March 23, 2010, the Secured Lender accelerated the indebtedness due under the 2009 Note.

9.      As of the Petition Date (defined below), the principal amount of the indebtedness owed to the Secured Lender by the Debtor, exclusive of accrued but unpaid interest, costs, fees, and expenses, is approximately $1,310,000.00 (the "Prepetition Indebtedness").

10.      Pursuant to the Loan Documents, the Secured Lender holds a mortgage on the Property and an assignment of rents, securing the Prepetition Indebtedness. The Debtor believes that the Property is worth approximately $700,000, significantly less than the Prepetition Indebtedness.

**Events Leading to the Filing of the Chapter 11 Case**

11.      For the past several months, the Debtor has earnestly pursued an out-of-court alternative to the filing of this chapter 11 case, including pursuing a forbearance from the Secured Lender from exercising its rights with respect to the Prepetition Indebtedness so as to permit the Debtor additional time to pursue refinancing options. These efforts were ultimately unsuccessful, and the Secured Lender indicated its intention to seek to have a receiver appointed to manage the Property. In order to support a financial restructuring of the Debtor, and thereby preserve the Debtor's operations and preserve value for the Debtor's creditors, tenants, investors, and other parties in interest, the Debtor commenced this bankruptcy case.

**The Bankruptcy Case**

12.     On September 22, 2010 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Kentucky (the "Court"). The Debtor is operating its business and managing its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been requested or appointed, and no creditors' committee has been appointed in this bankruptcy case.

**The Budget/Coverage of Administrative Expenses**

13.     The Debtor has prepared a budget for operation of the Debtor's business during this case (the "Budget"), a copy of which is attached hereto as Exhibit B . The Budget reflects anticipated cash receipts and expenditures and includes all operating expenses which the Debtor reasonably expects to incur during the 13-week term of the Budget in order to avoid immediate and irreparable harm (the "Operating Expenses").

14.     As set forth in the Budget, the projected Rent Payments during this case are sufficient to pay, in full, all Operating Expenses of the Property. By this Motion, the Debtor seeks authority to operate its business operations and fund the administrative expenses of this case, consistent with the Budget, with permission to exceed the projected Budget by no more than 10% on a cumulative basis without further order of the Court or consent of the Secured Lender, and to hold all excess Rent Payments, if any, in escrow for further disposition pursuant to an order confirming the Debtor's plan of reorganization, or other order of the Court.

15.     Notwithstanding the foregoing, as a result of the administrative expenses associated with the bankruptcy case, it is anticipated that the income from the Property will be insufficient to cover the non-operating administrative expenses. To cover this projected shortfall

and to ensure adequate liquidity for all expenses incurred by the Debtor in connection with this case, the Debtor has sought and obtained the Post-Petition Financing on an unsecured non-interest bearing basis, subject only to an unsecured superpriority administrative claim.

16.    Notably, the Debtor will segregate the proceeds of the Post-Petition Financing, such that the Rent Payments derived from the Property will be used solely to cover Operating Expenses, subject to further order of the Court. The proceeds from the Post-Petition Financing, which is not the subject of a prior security interest and not Cash Collateral, will be used to fund allowed professional fees and expenses incurred by the Debtor, as well as Operating Expenses in accordance with the Budget, to the extent not otherwise covered by the Rent Payments.

## Requested Relief

17.    The Debtor hereby seeks entry of an Interim Order, substantially in the form attached hereto as Exhibit A, and a Final Order which, among other things:

   a.    authorizes the Debtor to use Cash Collateral (as defined below) in the operation of its business;

   b.    deems the procedures proposed herein as providing adequate protection of the interests of the Secured Lender;

   c.    authorizes the Debtor to obtain the Post-Petition Financing and grant the Lender an allowed superpriority unsecured administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code with respect to the Post-Petition Financing;

   d.    schedules and approves the form of the Final Order and manner of notice of the Final Hearing; and

   e.    grants such further and related relief as the Court deems just and equitable.

**Basis for Relief**

**A.    Use of the Cash Collateral is Warranted as the Secured Lender is Adequately Protected in Its Interest in the Property**

18.    Generally, a debtor in possession, as trustee, is free to use, sell or lease property of the estate in the ordinary-course operation of the debtor's business. 11 U.S.C. § 363(c)(1); *In the Matter of Wheaton Oaks Office Partners Limited Partnership*, 27 F.3d 1234, 1240 (7th Cir. 1994). However, upon request of an entity who has an interest in property sought to be used by a debtor in possession, the Bankruptcy Code provides that the court shall condition or prohibit such use as is necessary to adequately protect that entity's interest. 11 U.S.C. § 363(e).

**The Secured Lender's Interest in Cash Collateral**

19.    Property of the estate consists of not only all property in which the debtor holds an interest upon the commencement of bankruptcy, but also the income or "rents," generated from that property. 11 U.S.C. § 541(a)(1), (6); *In the Matter of Wheaton Oaks Office Partners Limited Partnership*, 27 F.3d at 1240.

20.    Section 363(c)(2) of the Bankruptcy Code provides that a debtor in possession, as trustee, may not use "cash collateral" unless (i) each party that has an interest in such cash collateral consents; or (ii) the court, after notice and a hearing, authorizes such use in accordance with the provisions of section 363. 11 U.S.C. § 363(c)(2). "Cash collateral" consists of "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest." 11 U.S.C. § 363(a). This definition includes "the…rents…of property subject to security interest as provided in section 552(b) of [the Bankruptcy Code], whether existing before or after the commencement of a case under this title." 11 U.S.C. § 363(a).

-11-

21. Section 552(b)(2) of the Bankruptcy Code provides, in relevant part, the following:

> Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, and notwithstanding section 546(b) of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to amounts paid as rents of such property…, then such security interest extends to such rents…acquired by the estate after the commencement of the case to the extent provided in such security agreement, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. §502(b)(2).

22. Accordingly, the Rent Payments acquired after the Petition Date constitute the Secured Lender's cash collateral (the "Cash Collateral").

## Adequate Protection of the Secured Lender's Interest in Cash Collateral

23. What constitutes adequate protection of a secured creditor's interest in collateral is determined on a case-by-case basis. *See MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396-97 (10th Cir. 1987). However, regardless of how adequate protection is provided, the focus of the requirement is to protect a secured creditor from a diminution in the value of its interest in collateral during the period of use by the debtor. *See In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988). In other words, adequate protection is necessary only to the extent the use of the creditor's collateral will result in a decrease in "the value of such entity's interest in such property." 11 U.S.C. §§361, 363(e).

24. Here, use of the Rent Payments to maintain and repair the Property provides the Secured Lender adequate protection of the value of its interest in the Property. *See In re 499 W. Warren Street Associates, Ltd. Partnership*, 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992) (secured

creditor's interest in the collateral itself is adequately protected when a portion of the rents are applied to its operation and maintenance): *In re Pine Lake Village Apartment Co.*, 16 B.R. 750, 756 (Bankr. S.D.N.Y. 1982) ("Manifestly, the application of rent income solely to maintain and repair the property so as to prevent further deterioration will enhance the value of the property which serves as the collateral for the plaintiff-mortgagee's claim. The protection and maintenance of the plaintiff-mortgagee's collateral, without any diversion of funds to the debtor, clearly ensures that the plaintiff-mortgagee's investment is adequately protected."). Accordingly, use of the Cash Collateral to pay the Operating Expenses is warranted to provide the Secured Lender adequate protection of the value of its interest in the Property. Notably, the Debtor has agreed not to use Cash Collateral to pay professional fees and expenses of the estate which are affiliated with the Debtor's status as debtor in possession, subject to further order of the Court.

25.    Other courts have recognized that a secured creditor's interest in rent proceeds is adequately protected under similar procedures. *See, e.g., In re Marion Street Partnership*, 108 B.R. 218, 227 (Bankr. D. Minn. 1989) (appropriate for debtor to use rents subject to security interest of secured creditor provided rents were only used to pay operating expenses of property, rents were adequate to cover operating costs, and debtor deposited any excess rent in separate escrow account); *In re Forest Ridge, II*, 116 B.R. 937, 949 (Bankr. W.D.N.C. 1990) (secured creditor is adequately protected by an order which restricts debtor's use of cash collateral to the payment of actual, reasonable, and necessary operating expenses, and requires debtor to escrow net operating income for further disposition pursuant to an order confirming its plan, or other order of the court); *In re 499 W. Warren Street Associates, Ltd.*, 142 B.R. 53, 57 (Bankr. N.D.N.Y. 1992) (creditor's interest in the rental income generated by the property is adequately

protected when a portion of the rents is reinvested in the property for operational expenses and maintenance); *see also In re Willowood East Apartments of Indianapolis II, Ldt.*, 114 B.R. 138, 143-44 (Bankr. S.D. Ohio 1990) (holding under similar facts that equitie s of case exception under section 552(b) of the Bankruptcy Code required that lender's secur ity interest in postpetition rents extend only to the portion of those rents not reasonabl y needed to operate the property).

26.     The facts here are similar to those in *Marion Street Partnership*. In that case, the debtor was a general partnership whose sole asset was a 174 unit a partment building. *In re Marion Street Partnership*, 108 B.R. at 220. Pursuant to an assignment of rents clause in the recorded mortgage, the debtor's lender had a security interest i n the rents generated by the debtor's property. *Id.* at 226-27. Therefore, the rents were "cash collateral" for purpose s of section 363(a) of the Bankruptcy Code. *Id.* at 226. The debtor sought to use a portion of the rents to pay the operating expenses, including real estate taxes, a s well as needed repairs and maintenance costs, of the property and deposit any excess rents in a separate escrow account. *Id.* at 226. The Court held that since the rents were adequate to pay the se expenses, it was appropriate to allow the debtor to use the lender's cash collateral in this way. *Id.* at 227; *see also In re Princeton Square Associates, L.P.*, 201 B.R. 90, 96 (Bankr. S.D.N.Y. 1996) (no monetary protection is required to be provided by the debtor in possession to t he secured creditor to the extent that the rents are applied for the maintenance of the propert y in the manner a receiver would apply the rents).

27.     Moreover, opening a new account to sequester the rent payments subje ct to a security interest is not necessary where the debtor only uses the rent payments to cover the normal operating expenses of the underlying collateral. *See, e.g., In re Marion Street*

*Partnership*, 108 B.R. at 227 (permitting debtor to deposit rent payments which constituted secured creditor's cash collateral "in the account of debtor in possession or in the separate escrow account").

28.    Alternatively, the Debtor submits that use of the Rent Payments to pay the Operating Expenses is justified under section 506(c) of the Bankruptcy Code. Section 506(c) of the Bankruptcy Code provides that the bankruptcy court may authorize the use of cash collateral for the "reasonable, and necessary costs, and expenses for preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." 11 U.S.C. § 506(c). Case law holds that "secured cash collateral" may be used for expenses if (1) the secured party consents to the expenses, (2) the expenses are reasonable and necessary to preserving or disposing of such property and are incurred primarily for the benefit of the secured creditor, or (3) the secured party "caused" the expenditure of such funds. *In re River Oaks Limited Partnership*, 166 B.R. 94, 100 (E.D. Mich. 1994) (*citing In re Trim-X, Inc.*, 695 F.2d 296, 301 (7th Cir. 1982)). In this case, at a minimum, the Operating Expenses of the Property are "reasonable and necessary to preserving…[the Property] and are incurred primarily for the benefit of the secured creditor." Accordingly, the relief requested herein is also authorized by section 506(c) of the Bankruptcy Code.

29.    Bankruptcy Rule 4001(b) permits a court to approve a debtor's request for use of cash collateral during the 14-day period following the filing of a motion requesting authorization to use cash collateral, "only…as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bank. P. 4001(b)(2).

30.    The Debtor has an urgent need for the immediate use of the Cash Collateral pending the final hearing on this Motion.  If the Debtor is not permitted to use the Cash

-15-

Collateral to pay the Operating Expenses, the Debtor will suff         er immediate and irreparable harm

in the form of cessation of delivery of critical goods and servic         es to the Property. Moreover, in

addition to the Debtor, the tenants of the Property will likely suffe         r from diminished services.

Accordingly, the Debtor hereby requests the Court to grant the rel         ief requested herein on an

interim basis pending the final hearing on the Motion.

**B.    The Post-Petition Financing is on Terms Favorable to the Debtor and Sec         ured
     Lender and Necessary to Fund the Bankruptcy Process and Rehabilitate t         he Debtor**

31.     The Debtor has determined that, under the current circumstances, the         Financing

Agreement entered into with the Post-Petition Lender, the General         Partner of the Debtor, most

clearly satisfies the Debtor's necessary funding needs. In cons         ideration of the restructuring as a

whole, and the rights of the Secured Lender, the terms offered by         the Post-Petition Lender

present the most attractive terms upon which to obtain postpetition fina         ncing.  Given the

expenses of a bankruptcy proceeding, the Post-Petition Financing is nec         essary to provide Debtor

a reasonable opportunity to pursue a successful restructuring of its         assets. Moreover, since the

Post-Petition Financing would be on an unsecured basis, the secured positi         on of the Secured

Lender remains unimpaired.  The Debtor therefore believes that the         terms of the Financing

Agreement are fair and justified under the circumstances and should be approved by         this Court.

**Approval Pursuant to 11 U.S.C Section 364     (c)(1)**

> Pursuant to section 364(c)(1) of the Bankruptcy Code, a debtor
> may, in the exercise of its business judgment, and after notice         and
> a hearing, obtain credit or incur debt on an unsecured basis outside
> the ordinary course of business, allowable as a superpriority claim.

**Need for Financing**

32.     Unless the Debtor is authorized to obtain the Post-Petition Financing         requested

herein under the terms and conditions set forth in the Financing Agreem         ent, attached hereto as

-16-

Exhibit B , the Debtor will not have sufficient available sources of working        capital to operate its business in the ordinary course of business and pay all administrative        expenses (including professional fees) after the Petition Date and to pursue a rest        ructuring of its assets. The Debtor's ability to operate as a debtor in possession will permit it to        maintain current business relationships, pay its employees, and otherwise fund its operations        , which is essential to the Debtor's continued viability and the preservation and maintenance of the goi        ng concern value of the Debtor's business for any restructuring of the Debtor's assets and busi        ness operations.

**No more favorable alternative financing is available**

33.     The Debtor believes the proposed financing, which provides for an unsec        ured superpriority administrative claim status, with no interest acc        rual, is the best available financing under the circumstances. Given the Debtor's current financial st        atus, the Debtor believes that no other lender would provide such financing to the Debtor. Accordingly, the        Debtor believes that the Post-Petition Financing proposed under the Financing Agreement        represents the best available to it at this time.

**The financing is fair and reasonable**

34.     The Debtor believes that the terms and conditions of the Financing        Agreement and Interim Order are fair, just, and reasonable under the circumsta        nces, are appropriate for financing to debtors in possession, reflect the Debtor's exercis        e of its prudent business judgment consistent with its fiduciary duties, and are supported by reasonabl        y equivalent value and fair consideration. Moreover, since the Post-Petition Financing would be pr        ovided on an unsecured basis, it would not impair the Secured Lender's secured position. Acc        ordingly, the Debtor believes that any credit extended under the terms of the Interim        Order is extended in good faith by the Lender as that term is used in section 364(e) of the Bankruptcy Code.

35.    Given the Debtor's current financial status, the Debtor's manag      ement has concluded that the Financing Agreement is the best alternative ava      ilable under the circumstances. Bankruptcy Courts routinely defer to the debtor's bus      iness judgment on most business decisions, including the decision to borrow money. See      Group of Institutional Investors v. Chicago Mil. St. P. & Pac. Ry.      , 318 U.S. 523, 550 (1943); In re Simasko Prod. Co.      , 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and      not this Court"); In re Lifeguard Indus., Inc.      , 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) ("More exacting scrutiny would slow the administration of the Debtor' estate and      increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of th      e estates, and threaten the court's ability to control a case impartially."); Richmond L      easing Co. v. Capital Bank, N.A.      , 762 F.2d 1303, 1311 (5      th Cir. 1985).

36.    Unless the decision is arbitrary and capricious, a bankruptcy court shoul      d defer to a debtor's business judgment regarding the need for, and the proposed use of      , the requested funds. In re Curlew Valley Assoc.      , 14 B.R. 507, 511-13 (Bankr. D. Utah 1981). Bankruptcy Courts will generally not second guess a debtor's business decisions      when those decisions involve "a business judgment made in good faith, upon a reasonable basis, a      nd within the scope of his authority under the Code." Id      . at 513-14 (footnotes omitted).

37.    In the instant case, the Debtor has exercised sound business judgment      by seeking advice from its legal advisors in making the determination that t      he Financing Agreement is fair and reasonable and in the best interest of the Debtor's estate.      Accordingly, the Debtor should be granted authority under section 364(c)(1) of the Bankruptcy Code to ente      r into the Financing Agreement and borrow funds from the Post-Petition Lender on the basis d      escribed herein and in the Financing Agreement, on a super-priority basis.

**Far Reaching Negative Effect of Failure to Obtain Approval of Post-Petition Financing**

38.     The Debtor's inability to utilize the funds made available pursuant to the Financing Agreement will result in an inability to fund the ongoing costs of this bankruptcy process, jeopardizing the Debtor's status as debtor in possession and business operations, which could result in a disastrous ripple effect that may have far aching negative ramifications. Such potential negative consequences include but are not limited to: (i) a complete shutdown of the Debtor's operations at the apartment complex; (ii) cessation o f proper upkeep of the property; and (iii) substantial diminution in the value of the estate. Acco rdingly, the best way to protect the value of the assets of the estate and the collateral of the Secured Lender, to the fullest extent possible, is for the Debtor to obtain the Post-Petition Financing provide d by the Financing Agreement.

**C.     Granting the Relief Requested Herein Is Consistent with the Rehabilitative Policies of Chapter 11 of the Bankruptcy Code**

39.     The continued operation of the Debtor's business will allow the Debtor to maintain collateral in which the Secured Lender asserts an inte rest, preserve the Debtor's going concern value, and foster the Debtor's ability to propose and confir m a Chapter 11 plan. It is well established that, where possible, a bankruptcy court should resolve issues in favor of reorganization. *See, e.g., Chrysler Credit Corp. v. Ruggiere (In re George Ruggiere Chry sler-Plymouth, Inc.)*, 727 F.2d 1017 (11 [th] Cir. 1984). For example, in *George Ruggiere Chrysler-Plymouth*, the Eleventh Circuit Court of Appeals noted:

> A debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use "cash collateral" in its efforts to rebuild. Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated.

*In re George Ruggiere Chrysler-Plymouth, Inc.*     ,727 F.2d at 1019.

40.     Courts frequently allow a debtor to use cash collateral where such     use would enhance or preserve the debtor's going concern value and ability to re     organize.  *See, e.g., Federal Nat. Mort. v. Dacon Bolingbrook Assoc.*     , 153 B.R. 204, 214 (N.D. Ill. 1993);     *Stein v. United States Fanners Home Admin. (In re Stein)*     , 19 B.R. 458 (Bankr. E.D. Pa. 1982);     *In re Pine Lake Village Apartment Co.*     , 16 B.R. 750 (Bankr. S.D.N.Y. 1982). In     *Stein*, for example, the court allowed the debtor to use cash collateral where the sec     ured party was undersecured, finding that such cash collateral use was necessary to the debtor     's continued operations and the creditor's "secured position can only be enhanced by the continued operat     ion of the [debtor's business]." *In re Stein*     , 19 B.R. at 460.

41.     The Debtor has an immediate need for use of Cash Collateral to a     void harm to its operations, its tenants, and its creditors and on-going vendors.  Accordi     ngly, the policies underlying chapter 11 are best served by authorizing the Debtor to us     e Cash Collateral to pay Operating Expenses while the Debtor formulates its plan of reorganization.

### Final Hearing and Notice

42.     Pursuant to Bankruptcy Rule 4001(b), a final hearing on this emergency motion to borrow funds under a post-petition financing arrangement may not be comme     nced earlier than fifteen days after the service of such motion. Upon request, howev     er, a bankruptcy court is empowered to conduct a preliminary expedited hearing on such motion and a     uthorize the obtaining of credit necessary to avoid immediate and irreparable     harm to the debtor's estate. Fed. R. Bankr. Proc. 4001(b)(2).

43.     As noted above, it is critical to the success of this Chapter 11 Ca     se that the Debtor be able to use Cash Collateral and obtain debtor-in-possession financing     . Based on the current

status of the Debtor's business, it is also critical that the          Debtor be permitted to use Cash

Collateral, and it may be necessary to enter into such financing          facilities and to draw funds

thereunder, sooner than the 15 days' notice required under Bankruptcy Rule 4001 f          or a final

hearing on this Motion in order to operate its business and preserve          value at this critical juncture.

The Debtor believes that it will suffer immediate and irrepar          able harm in the absence of an

interim hearing and approval of the use of Cash Collateral and of t          he interim borrowings under

the Financing Agreement.

      44.     The Debtor requests that this Court (a) conduct an expedited hearing          with respect

to the Interim Order (as described herein) and (b) schedule the          Final Hearing on the Final Order

at the earliest possible date in accordance with Bankruptcy Rule          4001(b), but in no event later

than twenty (20) days from entry of the Proposed Order on an interim basis.

## Notice

      45.     Notice of this Motion has been given via ECF to the Office of the          United States

Trustee and all parties having entered an appearance in this          case, and by U.S. Mail, first class, to

the list of creditors attached hereto. The Debtor submits that, under          the circumstances, no other

or further notice is required.

      46.     No previous request for the relief sought herein has been made to t          his Court or

any other court.

## Conclusion

      For the foregoing reasons, the Debtor respectfully requests that t          he Court enter an Order,

substantially in the form annexed hereto as Exhibit A____, granting the relief requested in the Motion

and such other and further relief as may be just and proper.

### Notice of Hearing

Notice is hereby given that the foregoing Motion will be heard by        the Court on

October 12, 2010 at 11:00 a.m. (ET) or as soon thereafter as counsel ma        y be heard in the United

States Bankruptcy Court, 3 <sup>rd</sup> Floor Courtroom, 100 East Vine Street, Lexington, Kentucky

40507.

Respectfully submitted,

DINSMORE & SHOHL, LLP

*/s/ Ellen Arvin Kennedy, Esq.*
Ellen Arvin Kennedy, Esq.
John M. Spires, Esq.
Dinsmore & Shohl, LLP
250 W. Main Street, Suite 1400
Lexington, Kentucky 40507
Phone: (859) 425-1000
Fax: (859) 425-1099
ellen.kennedy@dinslaw.com
john.spires@dinlaw.com
**COUNSEL FOR CREEKSIDE SENIOR
APARTMENTS, LP
(UNDER PENDING APPLICATION)**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing with exhibits was served this the 11th day of October 2010, electronically in accordance with the method established under this Court's CM/ECF Administrative Procedures and Standing Order dated July 25, 2002, to the Office of the United States Trustee and all parties having entered an appearance in this case, and served without exhibits by first-class mail, postage prepaid, to the list of creditors attached hereto. Exhibits are available by request to the undersigned.

_/s/ Ellen Arvin Kennedy, Esq._
_Counsel for Debtor_
_Under Pending Application_

397867v3