## DEBTOR-IN-POSSESSION FINANCING AGREEMENT

This **DEBTOR-IN-POSSESSION FINANCING AGREEMENT** (this "Agreement"), dated the 12th day of October, 2010, is entered into between and among **CREEKSIDE SENIOR APARTMENTS, LIMITED PARTNERSHIP** ("Creekside"), a [Kentucky] Limited Partnership, and **Alliant Holdings of Creekside, LLC, the general partner of Creekside** ("Lender").

## Recitals

**WHEREAS,** Creekside has encountered financial difficulties and has filed for bankruptcy protection under chapter 11 of 11 U.S.C. § 101, et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Kentucky (the "Bankruptcy Court"), Case No. 10-53019 (the "Bankruptcy Case") currently pending before the Honorable Tracey N. Wise;

**WHEREAS,** Lender has agreed to provide post-petition debtor-in-possession financing (the "DIP Financing") to Creekside as more fully set forth herein and in orders to be entered by the Bankruptcy Court in the Bankruptcy Case (the "Financing Orders"), which orders shall be in form and substance acceptable to Lender in Lender's sole discretion, such DIP Financing to be used to pay certain expenses of Creekside during the Bankruptcy Case, including the funding of one or more retainers for professionals employed by Creekside in connection with the Bankruptcy Case ("Professionals") and the payment of fees and expenses incurred by such Professionals during the Bankruptcy Case, on the terms set forth below;

**WHEREAS,** in return for the DIP Financing, Lender requires that Creekside obtain entry by the Bankruptcy Court of the Financing Orders, specifically granting Lender, among other things, an unsecured superpriority administrative expense claim pursuant to section 364(c) of the Bankruptcy Code with respect to the DIP Financing; and

**WHEREAS,** Creekside and Lender each acknowledge and agree that the terms of this Agreement must be approved by the Bankruptcy Court and the Financing Orders entered by the Bankruptcy Court before this Agreement is enforceable.

## Agreement

Creekside and Lender each agree that the foregoing Recitals are true and correct.

The DIP Financing. Subject to Bankruptcy Court approval of this Agreement, and as otherwise set forth herein, Lender agrees to make available to Creekside a non-revolving, non-interest-bearing draw facility of up to $100,000.00 (the "DIP Loan"). Upon the occurrence of a Termination Event (as defined below), Lender's obligation to provide DIP Financing shall immediately terminate, and all outstanding amounts under the DIP Loan shall become immediately due and payable to Lender in full, without demand or notice of any kind; provided, however, that any fees and expenses of Professionals properly incurred prior to such termination and allowed by final order of the Bankruptcy Court thereafter shall be payable from the DIP Financing under this Agreement; provided further, however, that if the Termination Event is the confirmation of a Plan of Reorganization, the repayment of the DIP Loan shall be subject to the

terms of said Plan. Amounts borrowed under the DIP Financing and repaid to Lender may not be reborrowed. Creekside will execute and deliver to Lender such additional documents and instruments as Lender may reasonably require to evidence the DIP Loan.

Transfer of Funds Pursuant to This Agreement. The funds available under the DIP Loan, after first exhausting available cash from Creekside's operations, may be used as follows:

(a) to pay operating expenses of Creekside during the administration of the Bankruptcy Case in accordance with the terms of any order regarding Creekside's use of cash collateral, to the extent that Creekside's income is insufficient to cover all such operating expenses; and

(b) for the funding of retainers and the payment of fees and expenses of Professionals (after allowance by final order of the Bankruptcy Court).

After entry of a final order by the Bankruptcy Court approving the payment of fees and expenses of a Professional pursuant to a final fee application under section 330 of the Bankruptcy Code, any remaining sums held as a retainer by such Professional after payment of all such approved fees and expenses shall be promptly remitted to Lender via wire transfer or other direction of Lender.

Priority. Subject to entry of the Financing Orders by the Bankruptcy Court, Creekside agrees to grant Lender an allowed unsecured superpriority administrative expense claim pursuant to section 364(c) of the Bankruptcy Code, and said superpriority shall survive any conversion of the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code.

Breach of this Agreement. A breach (a "Breach") of this Agreement shall be deemed to have occurred if either party to this Agreement breaches any term or covenant contained herein, and such Breach shall continue unremedied for a period of at least five (5) business days after notice from the other party.

Remedies Upon Breach. Upon the occurrence of any Breach by Lender, Creekside shall be entitled to enforce this Agreement through specific performance in the Bankruptcy Court or such other venue as may be appropriate. Upon the occurrence of any Breach by Creekside, the outstanding principal balance of the DIP Loan, and any additional amounts owing to Lender under this Agreement, will be immediately due and payable in full without further notice or demand, and Lender shall be entitled to exercise its available remedies against Creekside.

Termination Event. Except as otherwise provided in paragraph 2 above, Lender's obligation to provide DIP Financing under this Agreement shall terminate immediately upon the occurrence of any of the following events (each a "Termination Event"), without demand or notice of any kind: (i) entry of an order in the Bankruptcy Case authorizing and/or directing a sale of all or substantially all of Creekside's assets pursuant to section 363 of the Bankruptcy Code, (ii) the filing of a plan of reorganization by a party in interest that does not propose to promptly pay in full all DIP Financing, except as authorized by Lender; (iii) entry of an order in the Bankruptcy Case confirming a Plan of Reorganization, (iv) entry of an order in the Bankruptcy Case converting the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code, (v) entry of an order in the Bankruptcy Case appointing a trustee or examiner in the

Bankruptcy Case; (vi) entry of an order in the Bankruptcy Case dismissing the Bankruptcy Case, or (vii) a Breach by Creekside. Notwithstanding the foregoing, Lender, in its sole discretion, may waive such right to terminate upon the occurrence of a Termination Event; provided, however, that any such waiver shall not be deemed a waiver by Lender of its right to terminate pursuant to any subsequent Termination Event.

Representations and Warranties of Creekside. Subject to the Bankruptcy Code, Creekside represents and warrants to Lender the following:

(a) Creekside has all requisite power and authority to enter into and to carry out the transactions contemplated by, and perform its obligations under, this Agreement;

(b) the execution and delivery of this Agreement and the performance of its obligations hereunder have been duly authorized by all necessary action on Creekside's part; and

(c) subject to the applicable provisions of the Bankruptcy Code, this Agreement and the undertakings set forth herein are the legal, valid, and binding obligation of Creekside, enforceable against it in accordance with its terms, subject to equitable principles, and bankruptcy, moratorium, and other laws affecting the rights of creditors generally.

Representations and Warranties of Lender. Lender represents and warrants to Creekside as follows:

(a) Lender has all requisite power and authority to enter into and to carry out the transactions contemplated by, and perform its obligations under, this Agreement;

(b) the execution and delivery of this Agreement and the performance of its obligations hereunder have been duly authorized by all necessary action on Lender's part; and

(c) subject to the applicable provisions of the Bankruptcy Code, this Agreement and the undertakings set forth herein are the legal, valid, and binding obligation of Lender, enforceable against it in accordance with its terms, subject to equitable principles, and bankruptcy, moratorium, and other laws affecting the rights of creditors generally.

Representation by Counsel. Each party hereto acknowledges that it has been represented by counsel in connection with this Agreement. The provisions of this Agreement shall be interpreted in a reasonable manner to effect the intent of the parties hereto.

Governing Law. This Agreement shall be governed by, and construed in accordance with, the laws of the Commonwealth of Kentucky, without reference to the conflicts of law provisions thereof and, to the extent applicable, the Bankruptcy Code.

4

Counterparts. This Agreement may be executed in counterpart, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement.

Modifications in Writing. No modification or amendment of the terms of this Agreement shall be valid unless such amendment is in writing and signed by Creekside and Lender.

Headings. The headings of the paragraphs of this Agreement are inserted for convenience only and shall not affect the interpretation hereof.

Case 10-53019-tnw    Doc 30-3    Filed 10/11/10    Entered 10/11/10 15:30:08    Desc
Exhibit 1 - Debtor-In-Possession Financing Agreement    Page 4 of 5

**IN WITNESS WHEREOF,** Creekside and Lender have caused this Agreement to be executed as of the date first set forth above.

**ALLIANCE HOLDINGS OF CREEKSIDE, LLC**

**By: Alliant Real Estate Investments, LLC, its sole member**
**By: Brian Doran**
**Its: President**

**CREEKSIDE SENIOR APARTMENTS, Limited Partnership**

**By: Alliant Holdings of Creekside, LLC, its general partner**
**By: Alliant Real Estate Investments, LLC, its sole member**
**By: Brian Doran, it President**

397907v2

5